IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005, | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 25-cv-719 |
| U.S. AGENCY FOR INTERNATIONAL<br>DEVELOPMENT,<br>Ronald Reagan Building<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20530, | ) ) ) ) ) ) | |
| NATIONAL ARCHIVES AND RECORDS<br>ADMINISTRATION,<br>700 Pennsylvania Ave. NW<br>Washington, DC 20408, | ) ) ) ) ) | |
| and | ) ) | |
| MARCO RUBIO, in his official capacity as<br>Acting Administrator of USAID and Acting<br>Archivist of the United States,<br>2201 C St. NW<br>Washington, DC 20520 | ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF[1]

### INTRODUCTION

1.      Plaintiff American Oversight brings this action against Defendants under the

Administrative Procedure Act, the Federal Records Act, and the Freedom of Information Act for

failure to comply with statutory obligations to ensure the maintenance, preservation, and recovery

---

[1] American Oversight intends to file a motion seeking emergency injunctive relief in this action, and an accompanying memorandum in support, on March 12.

of critical federal records unlawfully removed during the Trump administration's shutdown of the U.S. Agency for International Development ("USAID"), the primary federal agency tasked with providing humanitarian assistance internationally, and for failure to affirmatively disclose documents relating to the policies and operations of the agency.

2.     This action follows the unprecedented and fast-moving dismantling of USAID, including forced administrative leave of critical staff and alarming reports that USAID's acting agency secretary directed staff to "[e]mpty the safes with the classified and personnel records" and "[s]hred as many documents first, and reserve the burn bags for the when shredder becomes unavailable or needs a break."[2]

3.     Specifically, this action challenges the failure of Defendants USAID and Marco Rubio, in his official capacity as the Acting Administrator of USAID, to maintain a recordkeeping program that ensures federal records are maintained as required by the Federal Records Act ("FRA").

4.     This action further challenges the failure of Defendants USAID and Rubio to affirmatively disclose the policies governing USAID's operations and policies, including directives and policies relating to recordkeeping, as required by the "reading room" provision of the Freedom of Information Act ("FOIA").

---

[2] *See* @BrettMmurphy, X (Mar. 11, 2025, 11:40 AM), https://x.com/BrettMmurphy/status/1899485474088976605, and @BrettMmurphy, X (Mar. 11, 2025, 11:40 AM), https://x.com/BrettMmurphy/status/1899485475649261878 (ProPublica reporter describing in two social media posts a USAID directive sent via email to shred documents and the origin of the email from within the agency); *see also* Edward Wong, *U.S.A.I.D. Official Orders Employees to Shred or Burn Classified and Personnel Records*, N.Y. Times (March 11, 4:44 PM), https://www.nytimes.com/2025/03/11/us/politics/usaid-shred-burn-documents.html.

5.     This action also challenges the failure of the National Archives and Records Administration ("NARA"), and Marco Rubio, in his official capacity as the Acting Administrator of USAID and the Acting Archivist of the United States to carry out his nondiscretionary duties under the Federal Records Act ("FRA") to initiate an enforcement action to recover USAID federal records that have been unlawfully removed from USAID custody, including materials previously available on USAID's public-facing website, internal and external communications, and databases contained in its internal systems, or for other redress.

6.     The reported unlawful directive issued by a high-level official at USAID mandating the shredding of critical sensitive documents is just the latest in a series of chaotic events that have reportedly taken place during the highly publicized gutting of USAID in the past six weeks.

7.     During this time, Elon Musk's team at the Department of Government Efficiency ("DOGE")[3] has installed its own representatives at the agency, information and databases have been removed from USAID's website,[4] civil servants and contractors reportedly "lost access to email and USAID systems overnight,"[5] federal documents were reportedly removed from the

---

[3] *See Establishing and Implementing the President's "Department of Government Efficiency,"* Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025), *available at* https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

[4] *See, e.g.*, Omar Gallaga, *Missing: Thousands of Government Web Pages Removed by New Administration*, CNET (Feb. 3, 2025, 8:43 AM), https://www.cnet.com/tech/services-and-software/missing-thousands-of-government-web-pages-removed-by-new-administration/; Will Steakin et al., *Turmoil Inside USAID as Musk Calls the Agency 'Criminal' and Says It 'Has to Die,'* ABC News (Feb. 3, 2025, 4:59 PM), https://abcnews.go.com/Politics/turmoil-inside-usaid-doge-reps-offices-senior-officials/story?id=118368900; Rebecca Heilweil, *USAID Website Goes Dark, Staff Emails Deactivated Amid DOGE Takeover, Source Says*, Fedscoop, (Feb. 2, 2025), https://fedscoop.com/usaid-website-goes-dark-staff-emails-deactivated-amid-doge-takeover-source-says/.

[5] Lauren Kent et al., *Rubio Says He's Acting Director of USAID as Humanitarian Agency Is Taken Over by the State Department*, CNN (Feb. 4, 2025, 10:31 PM), https://www.cnn.com/2025/02/03/politics/usaid-washington-workers/index.html.

website as representatives from DOGE gained access to USAID's internal systems,[6] and two senior security officials at USAID were reportedly put on administrative leave after blocking efforts by DOGE representatives to access sensitive agency documents.[7]

8.    Also during this time, more than a thousand employees were placed on leave, staff were told not to report to USAID's headquarters, and at least two lawsuits were filed challenging an executive order issued by President Trump freezing international aid, followed by allegations that the administration was failing to comply with a temporary order blocking non-payment on contracts in place before President Trump's executive order was issued.[8]

9.    While the Trump Administration may wish that it could simply, with the blink of an eye and an implementation of an executive order, erase an independent agency established by Congress[9] and its attendant obligations as a federal agency, it may not, and federal records at USAID—relating not just to the important work done by the agency over the past 60 years but to the gutting of the agency itself—are in danger of being lost to history by Defendants' failure to comply with federal recordkeeping and disclosure laws.

10.    Defendants must comply with their obligations under the FRA and FOIA to ensure federal documents that have been unlawfully removed from the custody of USAID are protected and to prevent further unlawful destruction.

---

[6] *See* Steakin et al., *supra* n.4.

[7] *See* Edward Wong et al., *Top Security Officials at Aid Agency Put on Leave After Denying Access to Musk Team*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/02/us/politics/usaid-official-leave-musk.html.

[8] *See* Amy Schoenfeld Walker & K.K. Rebecca Lai, *A Timeline of Cuts, Legal Orders and Chaos at U.S.A.I.D.*, N.Y. Times (Mar. 5, 2025), https://www.nytimes.com/interactive/2025/03/05/us/politics/usaid-trump-timeline.html.

[9] *See* 22 U.S.C. § 6563.

**JURISDICTION AND VENUE**

11.     This Court has personal and subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 because this action arises under federal law, specifically the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, the FRA, 44 U.S.C. §§ 3301, *et seq*., FOIA, 5

U.S.C. §§ 552, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

13.     Plaintiff American Oversight is a nonpartisan, non-profit corporation organized

under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the

District of Columbia. It is committed to promoting transparency in government, educating the

public about government activities, and ensuring the accountability of government officials.

Through research and requests made under FOIA, 5 U.S.C. § 552, including for records preserved

pursuant to the FRA and mandated for disclosure under FOIA and its "reading room" provision, 5

U.S.C. § 552(a)(2), American Oversight uses the information it gathers, and its analysis of that

information, to educate the public about the activities and operations of the federal government—

including of USAID—through reports, published analyses, press releases and other media. As part

of its work, American Oversight has submitted FOIA requests to USAID and will continue to seek

records from the agency or its replacement in the future.

14.     On February 4, 2025, American Oversight submitted six FOIA requests to

USAID—each with a request for expedited processing—seeking communications and other

records pertaining to the status and operations of USAID and to any freeze on international aid

ordered by the Trump administration. As of the time of this filing, American Oversight has not

received any communications from USAID relating to its FOIA requests, or to its requests for expedited processing. Unlawful alienation of records responsive to these requests thwarts American Oversight's mission and interferes with its rights.[10]

15.    Defendant USAID is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), the APA, 5 U.S.C. § 551(1), and FOIA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

16.    Defendant NARA is a federal agency within the meaning of the FRA, 44 USC § 2901(14), and APA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

17.    Defendant Marco Rubio is sued in his official capacity as both the Acting Administrator for USAID and the Acting Archivist of the United States and is the agency head charged with overseeing the operations of both USAID and NARA.

18.    In Mr. Rubio's capacity as the Acting Administrator for USAID, he is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, and 3106.

19.    As Acting Archivist of the United States, Mr. Rubio is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

## LEGAL FRAMEWORK

### Federal Records Act

20.    The FRA governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. Chs, 21, 29, 31 and 33.

---

[10] Plaintiff notes relevant FOIA requests they have submitted to USAID demonstrate the way in which their work is harmed by the violations described in this Complaint. Plaintiffs do not, at this time, seek access to the federal records that are the subject of their FOIA requests outside of any such documents that USAID is obligated to post on its electronic "reading room" pursuant to FOIA.

21.     "Records" are defined as

all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

*Id.* § 3301(a)(1)(A).

22.     As applied to the operations of USAID, the FRA imposes duties on both the Acting Administrator of USAID and the Archivist of the United States. To comply with the statute, the Acting Administrator "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *Id.* § 3101.

23.     The Acting Administrator is further required to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

24.     When records are handled in a manner that contravenes the FRA, or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a).

25.     The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the

agency head "knows or has reason to believe have been unlawfully removed from [the] agency."
*Id.*

26.    If the agency head fails to initiate an action for recovery of unlawfully removed
records or other redress "within a reasonable period of time after being notified of any such
unlawful action" the FRA dictates that "the Archivist shall request the Attorney General to
initiate such an action, and shall notify Congress when such a request has been made." *Id.* §
3106(b).

27.    The obligation to initiate an enforcement action through the Attorney General to
recover unlawfully removed records or for other redress is a mandatory obligation that is not
subject to agency discretion. *Armstrong v. Bush*, 924 F.2d 282, 294–96 (D.C. Cir. 1991).

28.    Where both the agency head and the Archivist have "failed to initiate remedial
action in a timely [manner], private litigants may sue under the APA to require them to do so."
*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F.
Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

**Freedom of Information Act**

29.    The "reading room" provision of FOIA requires agencies to "make available for
public inspection" categories of records, including policies followed by an agency that are not
published in the Federal Register, administrative manuals, and instructions to staff that affect
members of the public. 5 U.S.C. § 552(a)(2).

30.    The reading room provision of FOIA serves a primary objective of eliminating
"secret law." *See Campaign for Accountability v. United States Dep't of Just.*, 732 F. Supp. 3d
63, 70 (D.D.C. 2024) (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S.
749, 772 n.20 (1989).

31.     Because the provision "reflects 'an affirmative congressional purpose to require disclosure of documents which have the force and effect of law,'" documents disclosed under that provision have been referred to as the "working law" of the agency. *Id.* (citing *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).

32.     An agency withholding documents that should be made available on its reading room "bears the burden of proving that it has not 'improperly' withheld" such records. *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 922 F.3d 480, 487 (D.C. Cir. 2019) (citing *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

## FACTS

### The Takeover of USAID and Failure to Establish Adequate Recordkeeping Practices

33.     On January 20, President Trump issued an executive order freezing almost all international aid.[11]

34.     On January 31, the then-Acting Administrator at USAID reportedly "passed along orders to the agency's IT department to hand the entire digital network to [DOGE representatives]."[12]

---

[11] *See Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/01/reevaluating-and-realigning-united-states-foreign-aid/; *see also* Ellen Knickmeyer & Farnoush Amiri, *State Department Freezes New Funding for Nearly All US Aid Programs Worldwide*, Assoc. Press (Jan. 24, 2025, 8:15 PM), https://apnews.com/article/state-department-trump-foreign-aid-bf047e17ef64cb42a1a1b7fdf05caffa.

[12] Anna Maria Barry-Jester & Brett Murphy, *In Breaking USAID, the Trump Administration May Have Broken the Law*, ProPublica (Feb. 9, 2025, 1:15 PM), https://www.propublica.org/article/usaid-trump-musk-destruction-may-have-broken-law.

35.     The DOGE representatives reportedly became "super administrators" who gained "access to USAID's financial system" as well as "the desktop files and emails" and personal information pertaining to thousands of USAID employees.[13]

36.     On Saturday, February 1, the USAID website "went dark," and reportedly the "entire USAID public affairs office was put on leave and locked out of their systems."[14]

37.     When the USAID site functionally disappeared, so too did public access to USAID policies and a significant amount of data, including access to the Development Experience Clearinghouse, a USAID repository for evaluations and reports.[15]

38.     That same weekend, two top USAID security officials were reportedly put on leave "for refusing members of [DOGE] access to systems at the agency, even when DOGE personnel threatened to call law enforcement."[16]

39.     Also that same weekend, hundreds of USAID staffers reportedly were reportedly "locked out of the agency's computer systems overnight," and others received emails stating that USAID headquarters would "be closed to Agency personnel on Monday, Feb. 3."[17]

---

[13] *Id.* (quoting one official as stating that the DOGE representatives embedded in USAID "had complete access to everything you could think of . . . [t]he keys to the kingdom.").

[14] *See* Kent et al., *supra* n.5

[15] *See* Shannon Arvizu, *DOGE Is Causing the Very Problem It Claims To Be Solving*, The Hill (Feb. 20, 2025, 12:30 P.M.), https://thehill.com/opinion/5154109-doge-firewalls-data-access/ ("Until three weeks ago, a simple look at USAID's Development Experience Clearinghouse would have debunked the '$50 million condoms to Gaza' claim, by showing that funding was going to Gaza Province in Mozambique, as part of an HIV prevention program and did not actually fund condoms. But now the clearinghouse has disappeared.").

[16] Jennifer Hansler et al, *Elon Musk Said Donald Trump Agreed USAID Needs to Be 'Shut Down'*, CNN (Feb. 3, 2025, 10:48 AM).

[17] Ellen Knickmeyer et al., *Trump and Musk Move to Dismantle USAID, Igniting Battle With Democratic Lawmakers*, Assoc. Press (Feb. 3, 2025, 7:36 PM), https://apnews.com/article/trump-musk-usaid-c0c7799be0b2fa7cad4c806565985fe2.

40.    On February 4, the Trump administration announced it was placing on leave "all direct hire personnel . . . with the exception of designated personnel responsible for mission-critical functions, core leadership and specially designated programs."[18]

41.    On information and belief, USAID's then-designated Agency Records Officer and FOIA Public Liaison, the agency's primary employee designated with ensuring compliance with records laws, was placed on administrative leave on or around that time.

42.    On March 11, the acting executive secretary for USAID reportedly told agency employees to "empty out the classified safe and personnel document files," and "[s]hred as many documents first, and reserve burn bags for when the shredder becomes unavailable or needs a break."[19]

43.    On information and belief, Defendant USAID and Defendant Rubio, as Acting Administrator of USAID, have failed to establish a records management program providing "effective controls over the creation and over the maintenance and use of records," 44 U.S.C § 3102(1), and to "establish safeguards against the removal or loss of records the head of [the] agency determines to be necessary and required by regulations of the Archivist," *id*. § 3105.

44.    The directive pertaining to document disposal, like most if not all other USAID administrative policies that are not published in the Federal Register, is not available on USAID's site or electronic reading room.

---

[18] *See* Phil Helsel et al*., USAID Announces Nearly All Direct Hires Will Be Placed On Administrative Leave*, NBC News (Feb. 5, 2025, 5:00 PM), https://www.nbcnews.com/news/us-news/usaid-nearly-direct-hires-placed-administrative-leave-rcna190736.
[19] *See* Wong, *supra* n.2.

45.     On information and belief, Defendant USAID and Defendant Rubio, as Acting Administrator of USAID, have failed to affirmatively disclose agency manuals, directives, and policies on USAID's site or on its electronic reading room in accordance with FOIA.

**American Oversight's FOIA Requests and Demands for Investigation**

46.     On February 4, American Oversight submitted six FOIA requests to the agency seeking records relating to the status of operations and staffing at the agency, as well as records relating to the implementation of any freezes on funding at the agency.

47.     One request specifically sought "[r]ecords sufficient to identify all employees who entered a position at the USAID since January 20, 2025, and the title or position of each employee," as well as "records sufficient to identify each title or position" of individuals who have "held multiple titles or positions since January 20, 2025." *See* Exhibit A.

48.     The same request sought resumes, conflicts or ethics waivers, and government forms typically issued to reflect a change for employee titles. *Id.*

49.     On February 5, 2025, American Oversight sent letters to Defendant Rubio and to then-Acting Archivist Colleen Shogan to "bring their attention to the potential unlawful destruction and removal of federal records" at USAID, and to request that "immediate action" be taken, including "initiat[ing] an action through the Attorney General" to "preserve and recover any and all USAID federal records, including the entirety of USAID.gov." *See* Exhibit B, Exhibit C, and Exhibit D.

50.     The letter to then-Acting Archivist Shogan was sent via email to an email address designated for the Archivist of the United States. *See* Exhibit C.

51.     Letters were sent to Defendant Rubio via certified mail to the Department of State and USAID. *See* Exhibit E and Exhibit F.

12

52.    A letter was sent to the Department of State because in addition to serving as Acting Administrator for USAID, and now—following President Trump's dismissal of Dr. Shogan on February 7—Acting Archivist of the United States, Mr. Rubio is also the Secretary of State and principal advisor to the President on international affairs.

53.    American Oversight requested to be alerted once any action had been taken. *See* Exhibits B, C, and D.

54.    On March 11, 2025, upon the reports of shredding and burning of documents at USAID, American Oversight sent two additional FOIA requests to USAID, seeking a copy of the email directing personnel to "Shred as many documents first, and reserve the burn bags for when the shredder becomes unavailable or needs a break," as well as other communications or guidance related to the destruction or removal of records. *See* Exhibit G and Exhibit H.

55.    On the same day, American Oversight also sent a letter to Defendant Rubio at the email address designated for the Archivist, demanding that he "take immediate action to prevent violations of the Federal Records Act . . . currently occurring at [USAID]." *See* Exhibit I.

56.    As of the filing of this Complaint, American Oversight has not received a response to any of its letters alerting officials to potential or actual FRA violations.

57.    Defendants are on notice of potential FRA violations through American Oversight's February 5 letters. On information and belief, evidenced by both the continued absence of USAID's formerly robust web presence and Defendants' lack of response to American Oversight's letters, Defendants have failed to take sufficient action to recover and preserve all unlawfully removed federal records, or to initiate an enforcement and recovery action through the Attorney General in a timely manner.

58.    Moreover, despite the notice provided in American Oversight's February 5 letters, not only did Defendants fail to undertake those mandatory actions, they permitted further destruction of records, evidenced through the March 11 reports of destruction of federal records at the agency.

59.    On information and belief, as Acting Administrator of USAID, Rubio did not report violations of the FRA to the Acting Archivist in violation of his duties as Acting Administrator under the Act.

60.    On information and belief, as Acting Archivist who had knowledge of the FRA violations in his position as Acting Administrator as USAID, Rubio did not initiate an enforcement action through the Attorney General, in violation of his duties as Acting Archivist under the Act.

61.    Plaintiff American Oversight is irreparably harmed by Defendants' failure to take required action. As stated above, Plaintiff submitted FOIA requests to USAID as part of its ongoing work, which are pending before the agency with no response or even acknowledgments. Plaintiff's ability to use the FOIA to gather agency records, analyze those records, and educate the public about government activities—actions core to Plaintiff's mission—is impeded where, as here, the agency head has failed to carry out his nondiscretionary duty under the FRA to initiate an action through the Attorney General to recover unlawfully removed federal records.

62.    Plaintiff's ability to use FOIA is further impeded and irreparably harmed by Defendants' failure to implement and maintain recordkeeping practices in compliance with the Federal Records Act.

63.    Plaintiff will continue to be harmed unless and until Defendant Rubio, as Acting Administrator of USAID, and USAID provide notice of the unlawfully removed records to the

Archivist and initiate an enforcement and recovery action for records through the Attorney General, and until Defendant Rubio and USAID implement and maintain recordkeeping policies in compliance with the Federal Records Act.

64.    Plaintiff is irreparably harmed by Defendant USAID's and Defendant Rubio's failure to comply with the "reading room" provision of FOIA, and post online agency manuals and directives not published in the Federal Register, including directives and policies relating to recordkeeping and the agency's procedures for processing requests under FOIA.

65.    Plaintiff will also continue to be harmed unless and until Defendant Rubio, as Acting Archivist, and NARA initiate an enforcement and recovery action for the recovery of the unlawfully removed records, or other redress, through the Attorney General.

## CLAIMS FOR RELIEF

### Count One – as to Defendant USAID and Acting Administrator Rubio
(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,
for declaratory and injunctive relief)

66.    Plaintiff incorporates the allegations above by reference as if fully set forth herein.

67.    Defendants USAID and Rubio have not made publicly available any recordkeeping agency guidelines implemented in accordance with the Federal Records Act.

68.    The email sent by a USAID official directing USAID staff to shred or use burn bags on sensitive classified and personnel information is not in accordance with any known standard Federal Records Act policy.

69.    Defendants USAID and Rubio have failed to maintain a recordkeeping program that ensures federal records are maintained as required by the Federal Records Act.

70.    USAID's recordkeeping policies are inadequate, arbitrary, capricious, and otherwise not in accordance with the Federal Records Act.

71.    Defendants' violations have injured American Oversight by compromising federal records responsive to its FOIA requests and increasing the likelihood that American Oversight will be unable to obtain responsive federal records.

72.    These injuries to American Oversight are likely to continue as long as Defendants USAID and Rubio fail to implement recordkeeping policies in accordance with the Federal Records Act.

73.    Defendants' failure to comply with the Federal Records Act via its failure to implement an adequate recordkeeping policy constitutes final agency action under the APA. 5 U.S.C. § 706.

**Count Two – as to Defendants USAID and Acting USAID Administrator Rubio**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

74.    Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

75.    Materials hosted on USAID's website, as well as its internal records, like all other "recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business," are "federal records" under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id*. § 2904(c)(1) and § 3105. Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301-3314 (setting forth the steps for lawfully disposing of records).

76.     The failure of agency officials to properly preserve federal records amounts to removal of agency records from the agency itself and violates the FRA.

77.     On or around February 1 and February 2, 2025, the USAID website was taken down almost in its entirety, including datasets pertaining to the agency's work and any policies or directives guiding the agency's work.

78.     Upon information and belief, these records have not and are not being maintained in accordance with the Federal Records Act.

79.     Upon information and belief, records pertaining to personnel information and classified information are being destroyed in contravention of the Federal Records Act.

80.     Defendant Rubio, in his capacity as Acting Administrator of USAID and Acting Archivist, is on notice of the unlawful removal or destruction of agency records through American Oversight's February 5, 2025 letters alerting him to the issue.

81.     Defendant Rubio, in both his capacity as Acting Administrator of USAID and Acting Archivist, is also on notice of the unlawful removal or destruction of agency records through widespread public reporting of the destruction of USAID's website and dismantling of the agency.

82.     Where, as here, this violation is known to USAID, the Acting Administrator has a nondiscretionary duty under the FRA to report the violation to the Acting Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

83.     As Defendant Rubio holds both the position of Acting Administrator for USAID and Acting Archivist of the United States and is aware of the violations, he is responsible for

initiating an investigation through the Attorney General for the recovery of records or other redress.

84.    Defendants Rubio and USAID have failed to perform their nondiscretionary duty to recover the unlawfully removed USAID records.

85.    Defendants Rubio and USAID have failed to perform their nondiscretionary duty to notify the Archivist of the above-described known FRA violations.

86.    Defendants Rubio, USAID, and NARA have failed to perform their nondiscretionary duty to initiate an action through the Attorney General to recover the unlawfully removed records or for other redress.

87.    Defendants' failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count Three – as to Defendants NARA and Acting Archivist Rubio**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

88.    Defendants NARA and Mr. Rubio have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so.

89.    Defendants NARA and Mr. Rubio have been made aware of the unlawfully alienated USAID records, including through American Oversight's February 5, 2025 letter to the Archivist.

90.    Mr. Rubio, as Acting Administrator for USAID, knows that USAID has failed to take appropriate action to recover those records.

91.     However, Mr. Rubio has also failed to act consistent with his independent obligation as Acting Archivist to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Mr. Rubio are in default of their nondiscretionary obligations under the FRA.

92.     This failure to act is a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

**Count Four– as to Defendant USAID and Acting Administrator Rubio
(Freedom of Information Act Affirmative Disclosure Obligations,
5 U.S.C. §§ 552 *et seq.*, for declaratory and injunctive relief)**

93.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94.     The Freedom of Information Act requires agencies, including USAID, to make available in an electronic format for public inspection and copying materials including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2).

95.     USAID's online "reading room" does not include statements of policy and interpretations which have been adopted by the agency and not published in the Federal Register, nor does it include "administrative staff manuals and instructions to the staff that affect the public."

96.     As a result, American Oversight and the public have been deprived of information the statute guarantees them as a right of access, including any existing guidelines about the processing of FOIA requests or maintenance of federal records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray that this Court:

1.     Declare that information maintained on USAID's public-facing website, internal and external communications sent and received by USAID officials in the course of conducting agency business, and any internal guidance, memoranda, or databases are agency records subject to the FRA;

2.     Declare that the failure to ensure such communications are preserved, as required by 44 U.S.C. § 2911, comprises an unlawful removal of federal records in violation of the FRA;

3.     Declare that Defendants USAID and Rubio have maintained an inadequate recordkeeping system under the Federal Records Act;

4.     Declare that Defendants have violated their respective duties under the FRA and APA;

5.     Declare that Defendants USAID and Rubio have failed to comply with the disclosure obligations under FOIA;

6.     Issue emergency injunctive relief and a permanent injunction ordering Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA, recovery of unlawfully removed records, and the recovery or restoration of any deleted or destroyed materials to the extent possible;

7.      Issue emergency injunctive relief and a permanent injunction ordering Defendants USAID and Rubio to implement and maintain an adequate recordkeeping system under the Federal Records Act;

8.      Issue emergency injunctive relief and a permanent injunction ordering Defendants USAID and Rubio to produce to American Oversight materials required to be disclosed by FOIA, including administrative staff manuals and policies followed by USAID but not published in the Federal Register, e.g., FOIA processing guidelines and directives relating to the maintenance of federal records.

9.      Issue emergency injunctive relief and a permanent injunction ordering Defendants to preserve all materials relating to Plaintiff's claims under the FRA and FOIA;

10.     Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

11.     Grant Plaintiff any other relief this Court deems appropriate.


Dated: March 11, 2025                    Respectfully submitted,


                                         */s/ Loree Stark*
                                         Loree Stark
                                         D.C. Bar No. 90021926
                                         Emma Lewis
                                         D.C. Bar No. 144574
                                         AMERICAN OVERSIGHT
                                         1030 15th Street NW, B255
                                         Washington, D.C. 20005
                                         (304) 913-6114
                                         loree.stark@americanoversight.org
                                         *Counsel for Plaintiff*