UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, | |
| Plaintiff, | |
| v. | Civil Action No. 25-0719 (TSC) |
| U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, et al., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER</u>**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Background ....................................................................................................................... 3

Legal Standards ............................................................................................................... 5

Argument ......................................................................................................................... 6

    I.      Plaintiff Lacks Standing to Obtain Prospective Relief. ........................................ 6

    II.    Plaintiff Cannot Establish the Likelihood of Success on the Merits. .................... 8

        A.      Plaintiff's FRA Contention Is Meritless and Factually Unsound. ............. 8

        B.      Plaintiff's Claim Under the Freedom of Information Act Is Moot. .......... 11

        C.      Plaintiff's Claims Against NARA Are Unlikely to Succeed. ................... 13

    III.   Plaintiff Fails to Show Irreparable Harm. ........................................................... 14

    IV.   The Balance of Interests Strongly Favors Denial of Plaintiff's Motion. ............. 16

    V.    Plaintiff Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief. ................................................................................................ 17

Conclusion ..................................................................................................................... 19

Defendants United States Agency for International Development ("USAID"), National Archives and Records Administration ("NARA"), and Marco Rubio, in his official capacity as Acting Administrator of USAID and Acting Archivist of the United States, respectfully submit the following opposition to Plaintiff's Motion for Temporary Restraining Order (ECF No. 5), which lacks all merit and should be denied in its entirety. Plaintiff cannot demonstrate that Defendants are currently or will imminently violate the Freedom of Information Act ("FOIA") or the Federal Records Act ("FRA") or that Plaintiff faces the faintest prospect of irreparable harm absent the sweeping relief Plaintiff demands in its Motion. Based on newspaper and social media reports about one email—taken entirely out of context—Plaintiff asserts that Defendants "enabled a brazen call to destroy records in shocking defiance of their statutory obligations." Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order ("Pl.'s Mem.") (ECF No. 5-1) at 10. This hyperbole bears little relationship to the facts.

Rather than the "brazen" purge Plaintiff imagines, as explained in the accompanying Declaration of Erica Carr, Acting Executive Secretary in the Executive Secretariat of USAID,[1] the email in question related to an effort to clear the space formerly occupied by USAID for its new

---

[1] The Government submitted this declaration two days ago, in response to motions seeking temporary restraining orders in two other cases, also predicated on a misapprehension of the March 10, 2025, email. *See American Foreign Serv. Assoc. v. Trump*, Civ. A. No. 25-0352 (CJN) (filed Feb. 6, 2025); *Personal Servs. Contractor Ass'n v. Trump*, Civ. A. No. 25-0469 (filed Feb. 18, 2025). In one of those two cases, the plaintiff has since voluntarily withdrawn its motion. *See American Foreign Serv. Assoc. v. Trump*, Civ. A. No. 25-0352, Notice of Withdrawal of Mot. for TRO (ECF No. 61). In the second case, Judge Nichols issued an order this morning denying the plaintiff's motion for a TRO, finding in part that there was no showing of irreparable harm because plaintiff "had not demonstrated that any records USAID intends to destroy are even relevant to [that] litigation in the first place," and that USAID "has attested that 'it will not destroy additional documents stored in USAID offices of the Ronald Reagan Building without giving notice to [the plaintiff] and an opportunity for [it] to raise the issue with the Court." Order at 4, *Personal Servs. Contractor Ass'n v. Trump*, Civ. A. No. 25-0469 (ECF No. 469).

tenant.   Ms. Carr's preceding email to the staff sought employees' assistance "[i]n order to determine if there are historical classified records or originally classified documents that must be maintained until they meet their disposition date."   Carr Decl., Ex. A at 1.   Pursuant to her instructions, to facilitate the new tenant's imminent arrival, trained USAID staff carefully sorted classified documents.   Any documents pertaining to current classified programs were retained, as were all personnel records and any document that must be retained under the FRA.   As discussed in the Declaration of William Fischer ("Fischer Decl."), submitted herewith, NARA has already conferred with USAID's Agency Records Officer, who confirmed that the agency was properly separating non-records from records, and that only non-records had been destroyed.   Fischer Decl. ¶¶ 9. Consistent with its regulations, NARA is further following up and seeking additional information from USAID concerning these events. *Id.* ¶¶ 6–10.

In the meantime, as explained in Ms. Carr's Declaration, USAID has already committed not to destroy any additional documents after March 11, 2025, without first notifying the plaintiffs in the *American Foreign Serv. Assoc* and *Personal Servs. Contractor Association* cases. USAID is preparing a declaration to the same effect in this case. And, to the extent Plaintiff's Motion seeks USAID policies concerning its record retention or FOIA processing, government counsel has already provided Plaintiff those policies. Thus, apart from the other deficiencies in Plaintiff's Motion, Plaintiff cannot establish that it would suffer irreparable harm—or, indeed, *any harm at all*—in the absence of the requested temporary restraining order.

Moreover, an order preventing Defendants from handling documents in accordance with applicable laws would hinder the Government's supervision and management of its records (including classified records), which does not serve the public interest.   For all these reasons, the Court should deny Plaintiff's Motion.

**BACKGROUND**

As part of the recent restructuring of USAID, the space in the Ronald Reagan Building in Washington, DC that the agency previously occupied is being decommissioned and prepared for a new tenant, U.S. Customs and Border Protection ("CBP"). Carr Decl. ¶ 5. As part of this decommissioning process, the General Services Administration ("GSA") and CBP asked that USAID clear the space of documents by March 11, 2025, if possible, and no later than March 31, 2025. *Id.* Stored in parts of the space USAID has vacated are certain classified documents that must be maintained in classified safes or sensitive compartmentalized information facilities ("SCIFs") until properly destroyed. *Id.* ¶ 3.

On March 11, 2025, thirty-four selected USAID personnel conducted a planned removal of documents from that space. *Id.* Those employees all hold Secret-level or higher security clearances, and all of them have completed records management training and training in how to properly safeguard and dispose of classified materials. *Id.* ¶¶ 3, 11. The vast majority of the removed documents fall into two categories: (1) copies of classified documents that were originally classified by other government agencies, or (2) derivatively-classified documents created for the purposes of, but not limited to, high-level meetings, official government travel, and intelligence briefings, which USAID no longer has a need to retain. *Id.* ¶ 6. Original copies of the classified documents are retained by other government agencies, or they are maintained in electronic format on classified systems. *Id.*

USAID staff working on the decommissioning were instructed to retain any originally classified USAID documents if they had not met their retention requirement in accordance with the disposition schedule, approved by NARA. *Id.* ¶ 7. Staff were also instructed to retain current classified program files. *Id.* These documents are being safeguarded in the Ronald Reagan Building vault until permanent storage is identified. *Id.*

Furthermore, USAID's Office of Human Capital and Talent Management was given an opportunity to participate in the March 11 record management activity to identify and safeguard personnel records in accordance with the records management disposition schedule. *Id.* ¶ 8. None of the destroyed documents, which are all classified, are personnel records. *Id.* Any personnel records remaining in the Ronald Reagan Building were retained. *Id.*

The removal of documents was conducted in accordance with applicable law, including the FRA, *see id.* ¶ 10, 5 C.F.R. § 1312, *id.* ¶ 9 and Executive Order 13526, *id.*

Most of the classified documents that were deemed subject to destruction on March 11, 2025, were placed in approved burn bags. *Id.* ¶ 12. Those burn bags are currently being stored securely in the Ronald Reagan Building, where USAID will hold them and their contents while other pending litigation concerning those materials continues. *Id.* USAID has further stated that it will not destroy any additional documents stored in the spaces of the Ronald Reagan Building without giving notice to Plaintiff and an opportunity for Plaintiff to raise the issue with the Court. *Id.* ¶ 13.

At some point on March 11, 2025, an internal email containing partial logistical instructions on carrying out the planned removal of documents was made public. *See* Pl.'s Mot. at 2. Citing newspaper and social media reports concerning that email—and based on a misapprehension of its meaning—Plaintiff now seeks sweeping extraordinary relief including an injunction barring USAID from "shredding, burning, or otherwise destroying records at USAID, including electronic communications." *Id.*

**LEGAL STANDARDS**

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). [2] A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018) (Boasberg, J.) (quoting *Davis v. Pub. Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). The D.C. Circuit has suggested, without deciding, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—"should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm." *Bartko v. Dep't of Just.*, Civ. A. No. 13-1135 (JEB), 2015 WL 13673371, at *1 (D.D.C. 2015) (citing *Sherley v. Sebelius*, 644 F.3d

---

[2]    "[T]he same substantive standard generally applies to both temporary restraining orders and preliminary injunctions." *Sterling Com. Credit-Michigan, LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 13 (D.D.C. 2011). *See also*, *e.g.*, *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

388, 392–93 (D.C. Cir. 2011), and *Davis*, 571 F.3d at 1292); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*). That said, the Supreme Court has confirmed that a plaintiff must satisfy all elements of the standard to succeed. *See, e.g., Murthy v. Missouri*, 603 U.S. 43, 99 n.18 (2024) ("To obtain a preliminary injunction, [plaintiff] was required to establish that she is likely to succeed on the merits, that she would otherwise suffer irreparable harm, and that the equities cut in her favor." (citing *Winter*)). Even before *Winter*, courts in this Circuit consistently stressed that "a movant must demonstrate 'at least some injury' for a preliminary injunction to issue." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). Thus, "if a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (Boasberg, J.) (quoting *CityFed Fin. Corp.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

## ARGUMENT

### I.  Plaintiff Lacks Standing to Obtain Prospective Relief.

"[W]hen a plaintiff seeks prospective relief such as an injunction," under Article III "the plaintiff must establish a sufficient likelihood of future injury." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). At the preliminary injunction stage, a plaintiff may not rest on "general allegations," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), but must adduce "specific facts" that make "a 'clear showing' that" that plaintiff "is 'likely' to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see id.* at 67 n.7 ("plaintiffs bear the burden to establish standing by setting forth 'specific facts'"). Without proof

of "ongoing" or "continuing" asserted misconduct regarding recordkeeping, Plaintiff simply fails to show "real and immediate threat of repeated injury," 603 U.S. at 58, necessary for Article III standing to seek prospective relief concerning USAID recordkeeping.

Here, Plaintiff's purported standing appears to rest on its ability to issue FOIA requests to USAID and obtain records in response to those requests. *See* Compl. ¶ 13. Plaintiff states that it "has submitted 13 FOIA requests to USAID in 2025" as of the date of its motion for temporary relief and provides several of these requests as exemplars. Pls.' Mem. at 9 n. 17; *see* Declaration of Emma Lewis (ECF No. 5-2) ¶¶ 4–5, 10–11. Plaintiff claims that "USAID's broad records destruction *may* include records responsive to many of American Oversight's additional FOIA requests," *id.* (emphasis added), but Plaintiff offers nothing to support this unadorned speculation as to why that might be so. Personnel records and records concerning "the direction to shred documents," *id.*, stand alone as the only categories of records Plaintiff specifically identifies as potentially responsive to Plaintiff's extant FOIA requests, and subject to alleged potential destruction in the absence of the requested relief. Neither category of documents would have been destroyed in the events that precipitated Plaintiff's lawsuit. As Ms. Carr explained, none of the destroyed documents (all of which are classified) constitute personnel records, and any personnel records remaining in the Ronald Reagan Building were retained. *See* Carr Decl. ¶ 8.

Thus, the factual predicate for Plaintiff's demand for prospective relief is USAID's March 11, 2025, document handling actions, which have been widely cast in press and social media reports as a wanton destruction or removal of agency records. *See* Pl.'s Mem. at 3–5. Ms. Carr's declaration demonstrates that the agency's March 11, 2025 steps to remove and destroy certain documents were narrow in that they pertained largely to certain categories of classified records; intended to facilitate USAID's move from the Ronald Reagan office space to facilitate a new

government lessee; and specifically designed to comply with the FRA's recordkeeping obligations. *See* Carr Decl. ¶¶ 3–12. None of the documents subject to the March 11, 2025 removal and destruction of records appears to be responsive to any of Plaintiff's sample FOIA requests or included in the materials designated for removal or destruction on March 11, 2025. Importantly, Ms. Carr's sworn statement states that no further USAID documents at the Ronald Reagan Building will be removed or destroyed absent notice and an opportunity for the Court to address any such developments. On these facts, there is no "ongoing" or "continuing" conduct by USAID personnel to support any finding that Plaintiff faces the "real and immediate threat" of repeated injury, and therefore, Plaintiff cannot establish Article III standing to support its demand for a temporary restraining order in this case.

II.    **Plaintiff Cannot Establish the Likelihood of Success on the Merits.**

Plaintiff's merits claims are that: (1) USAID's recent document handling actions violated the FRA; (2) that USAID has failed to comply with FOIA's "reading room" requirements with respect to USAID's recordkeeping policies and procedures; and (3) that NARA has failed to initiate an enforcement action to recover allegedly "unlawfully removed" documents. *See* Compl. ¶¶ 3–5, 67–70, 75–77, Plaintiff cannot establish a likelihood of success on its claims.

A.    **Plaintiff's FRA Contention Is Meritless and Factually Unsound.**

The FRA requires heads of federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. But even where a Government officer "has violated" the FRA, the Supreme Court has explained that "Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative authorities." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149–50 (1980). The Supreme Court held in *Kissinger* that the FRA does not create

any private enforceable rights, given that the statute was intended "not to benefit private parties, but solely to benefit the agencies themselves and the Federal Government as a whole." *Id.* at 149.

Applying that teaching, in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991), the Court of Appeals assessed three types of agency actions under the FRA: "(1) agency employees' 'destroying records in contravention of the . . . recordkeeping guidelines and directives'; (2) the agency's failure to employ adequate recordkeeping guidelines and directives; and (3) the agency head's or [Archivist of the United States]'s refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *See CREW v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018) (quoting *Armstrong*, 924 F.2d at 291, 294–95). Agency actions of the first type are "not reviewable," whereas those of the second and third types may proceed under the Administrative Procedure Act. *See id.* Hence, "courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA and ones alleging that the agency head or Archivist improperly refused to seek initiation of an enforcement action by the Attorney General." *Id.* at 258. Courts thus recognize that while the FRA "does contain several specific requirements," it "understandably leaves the details of records management to the discretion of individual agency heads." *Armstrong*, 924 F.2d at 293; *see also CREW v. Dep't of Homeland Sec.*, 507 F. Supp. 3d 228, 245 (D.D.C. 2020).

Here, Plaintiff asserts, based on social media and news media reports, that USAID personnel are, at the direction of the acting USAID executive secretary, "shred[ding] or burn[ing] agency documents" in a manner not authorized by the FRA. Pl.'s Mem. at 7. Plaintiff therefore depicts "agency employees" as engaged in "destroying records in contravention of the . . . recordkeeping guidelines and directives" of the agency, which is the first of the three types

of FRA claims analyzed in *Armstrong*—and, critically, the one type of claim that is "not reviewable" under that precedent. *See, e.g.*, *Pruitt*, 319 F. Supp. 3d at 257-58; *see generally Armstrong*, 924 F.2d at 291, 294–95.

In addition to this legal deficiency in Plaintiff's FRA contention, Plaintiff's assertions to this Court—informed as they are by a series of news articles and social media posts—lack factual foundation in what, in fact, occurred here. The Carr Declaration demonstrates the precarity of Plaintiff's factual claims. Ms. Carr explains that due to an upcoming transfer of the USAID office space in the Ronald Reagan building to a new lessee, she tasked a group of USAID employees with identifying and removing or disposing of "outdated and no longer needed derivatively classified documents" located "in classified safes and sensitive compartmentalized information facilities." Carr Decl. ¶ 3. Ms. Carr provided instructions to these employees to retain classified documents in accordance with the approved NARA disposition schedule. *Id.* ¶ 7. The vast majority of the removed documents were either (1) copies of classified documents that were originally classified by agencies other than USAID, or (2) derivatively classified documents created for such purposes as briefings and official travel, and USAID no longer has a need to retain them. Carr Decl. ¶ 6. Original copies of the classified documents are retained by other government agencies, or they are maintained in electronic format on classified systems. *Id.*

Turning to personnel records, USAID's human resources office was tasked "to identify and safeguard personnel records in accordance with the records management disposition schedule." Carr Decl. ¶ 8. None of the records that were destroyed or set aside for destruction were personnel records, and USAID employees handled those records under USAID's pre-existing records management disposition schedule. *Id.* None of the destroyed documents, which are all classified, are personnel records, and any personnel records remaining in the Ronald Reagan Building were

retained.  *See id.*

Despite being aware of Ms. Carr's sworn declaration, Plaintiff provides no contrary basis for second-guessing the conclusion of agency personnel that the March 11, 2025, conduct appropriately respected agency policies and procedures for records management.  Those personnel, Ms. Carr explains, received prior training in the agency's policies as to recordkeeping and as to classified information.  *See* Carr Decl. ¶ 11. Plaintiff's contentions are legally and factually meritless, landing well short of the showing required for the entry of the extraordinary relief requested.

**B.    Plaintiff's Claim Under the Freedom of Information Act Is Moot.**

Plaintiff's claim under the FOIA likewise misses the mark. Plaintiff asserts that Plaintiff is entitled to relief because USAID's "online 'reading room'" "does not include statements of policy and interpretations which have been adopted by the agency and not published in the Federal Register, nor does it include 'administrative staff manuals and instructions to the staff that affect the public.'"  Compl. ¶ 95 (quoting 5 U.S.C. § 552(a)(2)).  In particular, Plaintiff asks the Court to order production to Plaintiff of "a copy of any existing USAID recordkeeping and FOIA processing policies, guidance, and related directives."  Pl.'s Proposed Order, ECF No. 5-4 at 1.

But USAID, through Department of Justice counsel, already has produced those materials to the Plaintiff.  Counsel offered to provide those materials to Plaintiff on March 13, 2025, and transmitted them to Plaintiff's counsel, in electronic form, on March 14, 2025.  Those materials comprised (1) USAID Automated Directives System (ADS) Chapter 502 – Records Management Program, which establishes USAID's policies and procedures for managing records, ensuring compliance with federal laws, and maintaining proper documentation of the agency's activities, and (2) USAID Automated Directives System (ADS) Chapter 507 – Freedom of Information Act (FOIA), which outlines the USAID's policies and procedures for processing requests for Agency

records under FOIA, and addresses statutory, regulatory, policy, procedural, and processing requirements that USAID must follow.[3]  Under D.C. Circuit precedent, receipt of these materials in electronic form is all the relief to which Plaintiff would be entitled, even if Plaintiff were to prevail on its FOIA claim.

In *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 846 F.3d 1235 (D.C. Cir. 2017), the Court of Appeals examined the relief available under the same provision upon which Plaintiff relies here.  *See CREW*, 846 F.3d at 1243.  The Court of Appeals concluded: "we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision." *Id.*  Rather, the relief available was disclosure of the subject documents to the particular plaintiff before the court, *id.*, which is the very relief Plaintiff in this case seeks.  *See* Pl.'s Proposed Order, ECF No. 5-4 at 1.[4]

As a result, Plaintiff's FOIA claim is moot, and Plaintiff cannot demonstrate a likelihood of success on the merits of this claim.  *See*, *e.g.*, *Cueto v. Dir., Bureau of Immigr. & Customs Enf't*, 584 F. Supp. 2d 147, 149–50 (D.D.C. 2008) ("[w]hen all the relief sought has been obtained, there no longer exists a live controversy") (internal quotation omitted).

---

[3]    While Plaintiff correctly notes that these materials are not currently available in USAID's FOIA Reading Room, *see* https://foiarequest.usaid.gov/app/ReadingRoom.aspx, ADS Chapter 502 is currently available on the USAID website, at the following URL: https://drive.google.com/file/d/18ul7bUiCU1WvaZTQnOOcjc-wMtyu4cj1/view.

[4]    After Government counsel indicated that counsel would transmit the requested materials, Plaintiff's counsel additionally requested that USAID also supply a declaration attesting that the policies provided are the policies that USAID is currently following.  Such a declaration would not be available under FOIA; it is black letter law that "the FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169, 186 (1980) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975)).

### C.    Plaintiff's Claims Against NARA Are Unlikely to Succeed.

Plaintiff claims that NARA has failed to initiate enforcement actions in response to the "widespread public reporting" of purported unlawful document destruction at USAID, in violation of 44 U.S.C. § 3106. *See* Compl. ¶¶ 80–82; Pl.'s Mem. at 8. Plaintiff is wrong, because the factual predicate for any such action does not exist. 44 U.S.C. § 3106 requires agency heads to notify the Archivist of any "actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of the agency" and to "initiate action through the Attorney General for the recovery of records the [agency head] knows or has reason to believe have been unlawfully removed." 44 U.S.C. § 3106(a). Here, as is clearly demonstrated by Ms. Carr's declaration, no such "unlawful removal . . . or destruction" has or is threatened to occur. To the contrary, USAID personnel were tasked to identify, remove, and destroy certain classified records in accordance with the FRA; no personnel records were included among the documents that were destroyed; and such records remain at the Ronald Reagan Building. Carr Decl. ¶¶ 6–8. Put simply: there has not been, nor is there imminently going to be, any "unlawful removal . . . or destruction" of records mandating any report to NARA or to the Attorney General.

Nevertheless, the Fischer Declaration demonstrates that NARA is following its regulations and taking appropriate steps based on the press and social media reports alleging that documents were improperly destroyed. Specifically, on March 11, 2025, NARA was made aware of an allegation of unauthorized disposition of USAID records from various sources. *See* Fischer Decl. ¶ 5. NARA promptly contacted USAID's Agency Records Officer, who stated that USAID was not improperly destroying records but rather:

- assessing classified safes throughout the Ronald Reagan building to consolidate records,

- properly separating non-records from actual records,

- destroying only non-records which include[d] reference materials, copies, drafts, and deliberative unclassified/classified documents that staff printed as supporting meeting materials, and

- consolidating actual records requiring preservation into a classified vault.

*See id.* ¶¶ 6–8. Consistent with 36 C.F.R. § 1230.16, NARA further has asked that USAID provide a written response, with additional detail, concerning the allegations of unauthorized disposition of USAID records, within thirty calendar days of NARA's request. Thus, NARA's review of the circumstances surrounding the March 11, 2025 allegations is ongoing.

In sum, NARA is diligently carrying out its responsibilities, and Plaintiff therefore lacks any likelihood of success on the merits of Plaintiff's asserted claims against NARA.

## III. **Plaintiff Fails to Show Irreparable Harm.**

Any movant seeking either a TRO or preliminary injunction, must demonstrate that they will suffer irreparable harm in the absence of the requested relief. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Irrespective of a party's showing as to the other three factors necessary to obtain preliminary equitable relief, "'[a] . . . failure to show any irreparable harm' constitutes grounds for denying the motion." *Sterling Com. Credit-Michigan, LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 13 (D.D.C. 2011) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297); *see also, e.g.*, *English v. Trump*, 279 F. Supp. 3d 307, 336 (D.D.C. 2018) ("[Plaintiff's] inability to demonstrate that she is likely to suffer irreparable harm, regardless of her likelihood of success on the merits, is also a sufficient basis to deny her motion [for preliminary injunctive relief].") Just so in this case.

Plaintiff largely builds its argument for irreparable harm on its FOIA requests, submitted to USAID. Plaintiff points specifically to a FOIA request to USAID for personnel documents regarding any personnel who started at USAID since January 20, 2025, as well as "recent requests

for records, including communications, relating to the directive to shred documents." Pl.'s Mem. at 9. While Plaintiff further asserts "USAID's broad records destruction *may* include records responsive to many of American Oversight's additional FOIA requests," *id.* (emphasis added), Plaintiff offers nothing to support this unadorned speculation as to why that might be so. Personnel records and records concerning "the direction to shred documents," *id.*, stand alone as the only categories of records Plaintiff specifically identifies as potentially responsive to Plaintiff's extant FOIA requests, and subject to alleged potential destruction in the absence of the requested relief. But neither of these categories of documents would have been destroyed in the events that precipitated Plaintiff's lawsuit. As Ms. Carr explained, none of the destroyed documents (all of which are classified) constitute personnel records, and any personnel records remaining in the Ronald Reagan Building were retained. *See* Carr Decl. ¶ 8. Nor is it clear why personnel documents would be classified and reside in a SCIF. Likewise, the March 10, 2025, email about properly handling materials for shredding and using burn bags—itself an unclassified document— would not have been included in instructions concerning the destruction of classified documents.

Indeed, Plaintiff has not substantiated its allegations regarding the purported "unlawful" removal or destruction or documents from USAID, or supported its contentions that Defendants will do so in the future. While Plaintiff points to inadmissible newspaper articles and social media posts, Pl.'s Mot. at 2 n.1, the sole admissible evidence in the record—Ms. Carr's declaration attesting that "[t]he classified documents destroyed or identified for destruction were not permanent 'records' or they had met their retention requirements"—establishes that Plaintiff is mistaken in claiming that any unlawful document destruction occurred in the first instance.

Moreover, there is no ongoing conduct in dispute against which Plaintiffs' proposed restraint would be necessary. USAID has already committed not to destroy any additional

documents stored in the agency's offices at the Ronald Reagan Building without notice in other cases pending before the Court. *See* Carr Decl. ¶ 13. USAID currently is preparing a declaration that would make the same assurance in this litigation. That would allow Plaintiffs to seek the Court's intervention, as appropriate, at *that time*—it is not a basis for issuance of an extraordinary provisional remedy at this time, when Plaintiffs can only speculate as to whether any destruction to which they would object would even be proposed, much less carried out.

In this Circuit, any alleged irreparable injury supporting preliminary equitable relief "must be both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. It also must be of such "*imminence* that there is a clear and present need for equitable relief." *Id.* (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (emphasis in original). Yet any remaining alleged harm in this case is entirely conjectural. At this time—although Plaintiff might speculate that USAID will seek to destroy documents, the retention of which is required under federal law—that position is unsupported by any evidence. Such vague allegations about *possible* future harms fall far short of showing the D.C. Circuit requires of an applicant for a temporary restraining order. *See*, *e.g.*, *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (noting the Circuit's "high standard for irreparable injury").

**IV.    The Balance of Interests Strongly Favors Denial of Plaintiff's Motion.**

To determine the balance of interests, including the public interest here, the Court "weighs the harm" to Plaintiff "if there is no injunction against the harm to" the government "if there is" an injunction. *Cf. Pursuing Am.'s Greatness*, 831 F.3d at 511. As explained above, denial of the TRO will not harm Plaintiff because no relevant records were destroyed on March 11, 2025. Moreover, there is no currently ongoing alleged misconduct to enjoin. On the other side of the balance, the public interest and the Government's interests would be impaired if the Court were to enjoin Defendants from ordinary application of USAID's record retention requirements in

accordance with the agency's NARA-approved disposition schedule and its processes for handling current classified program files. *See* Carr Decl. ¶ 7. Plaintiff seeks a wide-reaching restraining order that would enjoin any removal or destruction of USAID documents, which would not only prevent the agency from proceeding with its decommissioning process but also impose unreasonable practical burdens on other agencies, particularly the General Services Administration and the new lessee of USAID's office space, which asked USAID to remove its files from the Ronald Reagan Building by March 31, 2025. *See* Carr Decl. ¶ 5. Plaintiff provides no countervailing justification for imposing such extreme restraints on the government's functions, warranting denial of the requested temporary restraining order.

## V.    Plaintiff Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief.

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiff's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond"). Particular given that the relief requested by Plaintiff could hinder Defendants' ability to timely transition USAID's Ronald Reagan Building office space to a new tenant, the Court should consider the implications of any order prohibiting Defendant from disposing of records in determining the among of bond to require from Plaintiff.

\*   \*   \*

**CONCLUSION**

For these reasons, the Court should deny the Plaintiff's Motion for a Temporary Restraining Order.

Dated: March 14, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:     _____/s/ Tabitha Bartholomew_____
TABITHA BARTHOLOMEW,
  D.C. Bar #1044448
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2529

YAAKOV M. ROTH
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
Federal Programs Branch

JULIA A. HEIMAN (D.C. Bar No. 986228)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Tel: 202-616-8480
julia.heiman@usdoj.gov

*Attorneys for the United States of America*

- 19 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>       Plaintiff,<br><br>    v.<br><br>U.S. AGENCY FOR INTERNATIONAL<br>DEVELOPMENT, et al.,<br><br>       Defendants. | Civil Action No. 25-0719 (TSC) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Motion for Temporary Restraining Order, Defendants' Opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.


SO ORDERED:


_____                    _____
Date                                                            TANYA S. CHUTKAN
                                                                   United States District Judge