UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, *et al.*,<br><br>          Defendants. | Civil Action No. 25-cv-719 (TSC) |

**MEMORANDUM OPINION**

Plaintiff American Oversight sues the U.S. Agency for International Development ("USAID"), the National Archives and Records Administration ("NARA"), and Secretary Marco Rubio in his official capacity as Acting USAID Administrator and Archivist of the United States, alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; the Federal Records Act ("FRA"), 44 U.S.C. § 3101, *et seq.*; and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. *See* Am. Compl. ¶ 1, ECF No. 12. Defendants move to dismiss Counts One through Three of the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. *See generally* Mot. to Dismiss, ECF No. 16-1; *see* Am. Compl. ¶¶ 119–145. For the reasons below, the court will GRANT Defendants' Partial Motion to Dismiss.

   **I.     BACKGROUND**

USAID has historically been "the lead international humanitarian and development arm of the U.S. government." Cong. Rsch. Serv., *U.S. Agency for International Development: An Overview* (Jan. 6, 2025). "Until recently, USAID used its appropriated funds to support

humanitarian and development projects in approximately 120 foreign countries—both via its independent work and via grants awarded to partner organizations and governments." *Am. Foreign Serv. Ass'n v. Trump*, 792 F. Supp. 3d 116, 123 (D.D.C. 2025).  The day he took office, President Trump issued an Executive Order declaring that "[t]he United States foreign aid industry and bureaucracy are not aligned with American interests and in many cases [are] antithetical to American values," Exec. Order. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025), and began the process of shutting down the agency.  By February 1, 2025, USAID's website was taken down, Am. Compl. ¶¶ 42–43, and a few days later, the Trump administration announced it was placing on leave "all direct hire personnel . . . with the exception of designated personnel responsible for mission critical functions, core leadership and specially designated programs," *id.* ¶ 46.  On March 11, a USAID official reportedly directed remaining employees to "empty out the classified spaces and personnel files" and "[s]hred as many documents first, and reserve the burn bags for when the shredder becomes unavailable or needs a break." *Id.* ¶ 48.

That same day, Plaintiff, a non-profit organization that aims to promote "transparency in government," *id.* ¶ 17, filed its original Complaint, alleging that these actions violated the APA, FRA, and FOIA, *see generally* Compl., ECF No. 1.  The next day, Plaintiff moved for a temporary restraining order instructing the agency to "[i]mmediately desist from unlawfully destroying federal records" and provide a copy of relevant recordkeeping and FOIA processing policies or guidance not available on the public website. *See* Mot. for TRO, ECF No. 5-4.  In response, Defendants filed several declarations describing USAID's handling of records at the agency's offices in the Ronald Reagan Building in Washington, D.C. and committing to provide advance notice before any further destruction of records.  *See* ECF Nos. 7-2, 8-1.  Erica Carr, Acting USAID Executive Secretary, attested that USAID would not destroy "any additional documents after

March 11, 2025, without first notifying" opposing counsel "and providing an opportunity to raise the issue before this Court." Carr Decl. at 2, ECF No. 7-2. Leo Ruth, Acting USAID Director of Security, likewise declared that USAID "will not destroy any additional documents stored in USAID offices of the Ronald Reagan Building without giving notice to the Plaintiff and an opportunity for Plaintiff to raise the issue with this court." Ruth Decl. ¶ 3, ECF No. 8-1. Finally, William Fischer, NARA Acting Chief Records Officer, declared that USAID's Agency Records Officer stated that the agency was only "disposing" of "non-records which includes reference materials, copies, drafts, and deliberative unclassified/classified documents that staff printed as supporting meeting materials." Fischer Decl. ¶ 8(c), ECF No. 7-1.

After a hearing, the court held Plaintiff's motion for a temporary restraining order in abeyance and ordered the parties to meet and confer. *See* Min. Order (Mar. 13, 2025). The parties engaged in a series of discussions to address Plaintiff's concerns, culminating in an agreed-upon plan for the disposition of records housed at the Ronald Reagan Building in Washington, D.C. *See* Heiman Decl., ECF No. 16-3, Ex. C. Plaintiff then withdrew its motion for a temporary restraining order. *See* ECF No. 10.

Several additional events transpired during this period. On March 28, 2025, USAID notified nearly all employees via email that they would be terminated as part of a Reduction in Force initiative and that they could choose to take "voluntary administrative leave," in which case they may lose access to certain USAID systems. Am. Compl. ¶¶ 50, 52. On April 24, the agency circulated another memorandum to employees stating that upon termination, government-issued equipment—including cell phones, tablets, and laptops—would be "remotely wiped," including for previously-terminated contractors. *Id.* ¶¶ 51, 54.

On May 9, 2025, Plaintiff filed an Amended Complaint, incorporating the various

intervening events and alleging that Defendants' revised statements of policy did not adequately safeguard agency records from loss or destruction. *Id.* ¶ 1. Plaintiff seeks declaratory and injunctive relief under the APA. *Id.* On June 30, Defendants filed a motion to dismiss Counts One through Three of the Amended Complaint. ECF No. 16.

## II.  LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "[A] plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Hallinan v. United States,* 498 F. Supp. 2d 315, 316 (D.D.C. 2007). Failure to adequately plead Article III standing is grounds for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "[I]n deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. FEC,* 362 F. Supp. 2d 138, 142 (D.D.C. 2005). While the court "must accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (cleaned up), it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, []or . . . accept plaintiffs' legal conclusions," *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

To establish Article III standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "[W]hen a plaintiff seeks

prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024), which is satisfied by showing "a real and immediate threat of repeated injury," *Murthy*, 603 U.S. at 58 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999). The statute requires agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions." 44 U.S.C. § 3101. "When the head of a federal agency 'knows or has reason to believe' that federal records 'have been unlawfully removed' from agency custody, he has a duty to 'initiate action through the Attorney General for the recovery of [the] records.' 44 U.S.C. § 3106(a). If the agency head fails to do so 'within a reasonable period of time,' the Archivist must do the same. *Id.* § 3106(b)." *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 232–33 (D.D.C. 2018). "If the agency head and the Archivist ignore the statute, private litigants may sue under the Administrative Procedure Act to enforce it," *id.*, alleging under 5 U.S.C. § 706(1) "that an agency failed to take a *discrete* agency action that it is *required to take*," *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see* 5 U.S.C. § 706(1).

### III.   ANALYSIS

Counts One through Three involve claims under the FRA and APA arising from USAID's alleged failure to preserve federal records. Count One, as narrowed in Plaintiff's briefing, alleges that USAID and Acting Administrator Rubio failed to maintain an adequate recordkeeping program under the FRA as to (1) "employee and contractor records not already saved on USAID

systems," (2) "physical records," and (3) "records stored on USAID's website, to the extent they are subject to impending or threatened removal, alteration, or destruction." Opp'n to Mot. to Dismiss at 27, 29; *see* Am. Compl. ¶¶ 119–126. Count Two alleges that USAID and Acting Administrator Rubio failed to notify the Archivist of the unlawful record removal and initiate an enforcement action through the Attorney General to recover the unlawfully removed records, in violation of 44 U.S.C. § 3106(a). Am. Compl. ¶¶ 127–140. Count Three alleges that NARA and Acting Archivist Rubio failed to initiate a recovery action through the Attorney General when the agency head (also Rubio) failed to do so, in violation of 44 U.S.C. § 3106(b). *Id.* ¶¶ 141–145. While the Amended Complaint does not specify any form or scope of injunctive relief, Plaintiff's briefing specifies that the court can redress Count One by "ordering USAID to provide . . . [its] operative recordkeeping policy" and requiring revisions "if that policy is legally inadequate"; Count Two by "ordering USAID and Acting Administrator Rubio to fulfill [their] obligations under Section 3106(a) of the FRA"; and Count Three by "ordering NARA and Acting Archivist Rubio to refer this matter to the Attorney General to initiate an action for recovery or other redress." Opp'n to Mot. to Dismiss at 4–5.

Plaintiff's theory of standing to seek prospective relief rests on its ability to obtain records in response to its FOIA requests to USAID. *See* Am. Compl. ¶¶ 18 n.31, 124–125; Opp'n to Mot. to Dismiss at 26–27. Plaintiff reasons that as long as Defendants continue their policy of records destruction, records responsive to its pending FOIA requests will become unavailable. *See* Opp'n to Mot. to Dismiss at 32. Plaintiff, however, has failed to adequately plead an imminent threat of future injury from improper destruction or removal of relevant records. And to the extent Plaintiff rests its claims on physical records that were already destroyed on March 11, 2025, recovery of such records is speculative at best, barring redressability. Absent either a concrete prospective

injury or a redressable past injury, Counts One through Three are nonjusticiable.

*1. Physical Records Housed Outside of the D.C. Area*

Plaintiff alleges "a pervasive *de facto* policy, implemented on a wide scale across the agency," authorizing unlawful destruction of records, including physical records housed in USAID offices outside of the D.C. area. Opp'n to Mot. to Dismiss at 16. As to such physical records, Plaintiff's argument appears to be that because the agency employed an overbroad definition of non-records in connection with decommissioning procedures at the Ronald Reagan Building and corrected that policy only for records housed in the D.C. area, records located outside of the D.C. area are still at risk of unlawful destruction. *See* Opp'n to Mot. to Dismiss at 29–30. As evidence of such a policy, Plaintiff points to a USAID officer's statement that on March 11, 2025, the agency disposed of "non-records, which includes reference materials, copies, drafts, and deliberative unclassified/classified documents that staff printed as supporting meeting materials." Fischer Decl. ¶ 8(c); *see* Am. Compl. ¶¶ 72–73. At the hearing on Plaintiff's motion for a temporary restraining order, the court observed that this characterization—in particular the characterization of "deliberative unclassified/classified documents that staff printed as supporting meeting materials"—was "problematic." Hearing Tr., ECF No. 11, 6:13–17, 18:7–11; *see* 44 U.S.C. § 3301(a)(1)(A) (broadly defining "records" to include "all recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them").

Plaintiff now concedes that the later, agreed-upon policy memorialized in the Heiman Declaration complies with the FRA. *See* Opp'n to Mot. to Dismiss at 29. Plaintiff nonetheless

Case 1:25-cv-00719-TSC   Document 25   Filed 03/03/26   Page 8 of 12

asks the court to assume, based merely on the fact that the updated policy mentions only "USAID spaces in the National Capital Region" that the agency would apply an overbroad definition of non-records outside of that area. Heiman Decl. ¶¶ 13–14, ECF No. 16-3, Ex. C; *see* Opp'n to Mot. to Dismiss at 29–30. But Plaintiff offers no evidence that the USAID officer's errant definition of "non-records" in connection with decommissioning procedures at the Ronald Reagan Building, *see* Fischer Decl. ¶ 8(c), reflected a default policy applicable to other locations. In fact, the record suggests otherwise. According to the Carr Declaration, "[c]lassified documents housed in Bureaus and Offices that were unable to provide assistance with this effort remain untouched, and classified records remain in their respective classified safes for those Bureaus and Offices that did not participate." Carr Decl. ¶ 7. Absent "contrary evidence in the record [or] evidence of agency bad faith," *Citizens for Responsibility & Ethics in Washington v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (cleaned up), Plaintiff fails to establish sufficient affirmative or non-speculative evidence of a "certainly impending" injury from improper destruction of records housed outside of the D.C. area, *Clapper*, 568 U.S. at 410.

       2. *Employee and Contractor Records on Government-issued Devices*

Plaintiff also alleges that USAID's recordkeeping policies were insufficient to preserve all electronic records saved on government-issued devices, including text messages and similar communications, before those devices were remotely wiped. *See* Am. Compl. ¶¶ 53–55. In reaching this conclusion, Plaintiff interprets the agency's offboarding policy as described in the Kahn Declaration, requiring departing employees to confirm that they have transferred "electronic documents on personal electronic devices . . . to an accessible recordkeeping system or to [a] supervisor and/or successor," to exclude "government-issued devices." Am. Compl. ¶¶ 51, 55 (citing Kahn Decl. ¶¶ 3, 7, ECF No. 16-2); *see* Opp'n to Mot. to Dismiss at 28. Plaintiff also

Page 8 of 12

reasons that the transfer of records to a supervisor or successor does not ensure their preservation given the mass termination of USAID employees. *See* Am. Compl. ¶ 50; Opp'n to Mot. to Dismiss at 28. But the agency also requires confirmation that departing employees have "transmitted all official records created or received on any personal messaging platforms so that they are retrievable and accessible"—a requirement that is not limited to personal devices. Kahn Decl. ¶ 7. And as to "records on official agency applications[,] . . . remotely wiping the devices will not destroy any unique records," as such records are backed up on USAID systems. *Id.* ¶ 4. In light of these statements, Plaintiff fails to allege a non-speculative basis on which to infer future destruction of electronic communication records on government-issued devices.

      3.  *Website Records*

Plaintiff also contends that "[t]o the extent that USAID plans (or at least refuses to disclaim the option) to delete its stored website records as the agency is dismantled, Plaintiff will suffer future injury to its interests in its pending and future FOIA requests." Opp'n to Mot. to Dismiss at 31; *see* Am. Compl. ¶¶ 128–131. Such speculation, standing alone, cannot form the basis of an allegation of a "real and immediate threat" of injury, *Murthy*, 603 U.S. at 58, especially given the Kahn Declaration's assurance that USAID's "website still exists in USAID systems" and that the "status" of materials on the website and "how they will be housed has not yet been determined," Kahn Decl. ¶ 8; *cf.* Heiman Decl. ¶ 11, Ex. C ("Since USAID does not have a NARA-approved record schedule for its web-content, webpages are unscheduled records that must be treated as permanent until there is a NARA-approved disposition authority."). Absent evidence that website materials relevant to Plaintiff's FOIA requests are subject to imminent deletion, Plaintiff has failed to adequately allege a sufficiently concrete likelihood of future injury as USAID's website records.

   4. *Physical Records Destroyed on March 11, 2025*

Plaintiff's claim as to physical records unlawfully destroyed on March 11, 2025, is separately nonjusticiable for lack of redressability. Plaintiff claims that "Defendants could remedy this injury [by] taking steps to recover the records or referring the matter to the Attorney General." Opp'n to Mot. to Dismiss at 31. "A plaintiff lacks standing if it is 'merely speculative' rather than 'likely' that a decision in the plaintiff's favor would redress the alleged injury." *Cause of Action Inst.*, 319 F. Supp. 3d at 234 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "In the Federal Records Act context, redressability requires a 'substantial likelihood' that records will be recovered; a referral to the Attorney General, if 'pointless' because the records are unrecoverable, is not enough." *Am. C.L. Union Found. of Fla. v. U.S. Immigrs. & Customs Enf't*, 2023 WL 6461053, at *6 (D.D.C. Aug. 31, 2023); *see Cause of Action Inst.*, 319 F. Supp. 3d at 234.

Even assuming USAID unlawfully disposed of certain classified records, such records would have been "destroyed completely to preclude recognition or reconstruction." 36 C.F.R. § 2001.47; *see* Nat'l Sec. Agency/Cent. Sec. Serv., Requirements for Paper Shredders § 4.1 (Apr. 2021) (requiring paper shredders that "shred paper or CDs to a maximum edge size of 1 millimeter by 5 millimeters").[1] Plaintiff offers no evidence that the agency did not comply with applicable regulations in destroying the classified materials it identified for disposal. "With these federal records apparently fatally lost," there is "no substantial likelihood that referral to the Attorney General will yield any fruit," and Plaintiff's claim as to any unauthorized destruction of physical records is not redressable. *Cause of Action Inst.*, 319 F. Supp. 3d at 236; *see Jud. Watch, Inc.*, 844

---

[1] According to the Carr Declaration, only classified documents were destroyed as part of the decommissioning of the Ronald Reagan Building. *See* Carr Decl. ¶ 8.

F.3d at 956 (noting that agency head or Archivist must initiate action with the Attorney General unless they either recover all the missing records or "establish their fatal loss"); *cf. Piper v. U.S. Dep't of Just.*, 294 F. Supp. 2d 16, 22 (D.D.C. 2003) ("Destroyed documents are nonexistent and nonexistent documents cannot remain in someone's possession.").

*   *   *

These failures are fatal to Counts One through Three. A plaintiff must demonstrate standing specific to the forms of relief it seeks. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). As explained above, the Amended Complaint does not supply specific evidence—and given the agency's declarations, the court cannot draw a reasonable inference—that USAID currently lacks an adequate recordkeeping policy, that any such policy is being violated on an ongoing basis, or that records relevant to Plaintiff's FOIA requests are at imminent risk of unlawful destruction. Absent such allegations, none of Plaintiff's requested remedies—compelling disclosure of a recordkeeping policy, mandating FRA compliance, or triggering an Attorney General referral—are tethered to a concrete prospective injury. And to the extent Plaintiff rests its claims on physical records already destroyed on March 11, 2025, those claims fail because the irreversible destruction of classified records forecloses any meaningful redress.

Because Plaintiff lacks standing to pursue the injunctive remedies it seeks, and cannot maintain an action for declaratory relief alone, Counts One through Three should be dismissed in their entirety. *See California v. Texas*, 593 U.S. 659, 673 (2021) (noting that declaratory relief "cannot alone supply jurisdiction otherwise absent"); *see Citizens for Resp. & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 135 (D.D.C. 2018).

### IV.   CONCLUSION

For the foregoing reasons, the court will GRANT without prejudice Defendants' Partial

Motion to Dismiss.  ECF No. 16.  A separate order will accompany this Memorandum Opinion.

Date:  March 3, 2026

                                                *Tanya S. Chutkan*
                                                TANYA S. CHUTKAN
                                                United States District Judge

Case 1:25-cv-00719-TSC   Document 25   Filed 03/03/26   Page 12 of 12

Page **12** of **12**